OPINION OF THE COURT
Aaron F. Goldstein, J.
In this action for a permanent injunction, plaintiffs move to restrain defendants from further construction, maintenance and use of an eruv on the grounds that plaintiffs’ rights have been violated under the establishment clause of US Constitution 1st Amendment, made applicable to the States by the due process clause of US Constitution 14th Amendment; NY Constitution, article I, § 3 and Administrative Code of the City of New York § 383-1.0. Plaintiffs further allege that defendant Community Board No. 14 improperly granted permission for defendant Community Eruv of Belle Harbor (hereinafter eruv committee) to construct the eruv. Defendants cross-move to dismiss the com *945 plaint for failure to state a cause of action and for summary judgment.
An eruv, under Jewish law, is an unbroken physical delineation of an area. In tangible terms, it is created from natural barriers or from wires strung across poles. Among other things, an eruv must be built on land owned by the public, it may not have a ceiling, it must be at least 40 inches high, and must be accessible to the public 24 hours a day. This device allows an observant Jewish person on the Sabbath to carry or push objects from his residence, i.e., private property, onto public property and vice versa, activities such as a person would be prohibited from doing otherwise by creating the fiction of a communal “private” domain. Although its use is specifically for the Sabbath, the eruv is maintained throughout the year by observant Jews. New York has about 30 existing eruvs, there are 9 eruvs in New Jersey, and many others scattered throughout the United States.
It appears that on or about April 10, 1984, at a monthly meeting of Community Board No. 14 the eruv committee, consisting of representatives of four Orthodox congregations, was given permission to construct and maintain an eruv. The eruv was to span Beach 16th Street to Beach 149th Street and the beach to Beach Channel Drive, an area covering approximately 90 blocks. Application was then made to the New York City Department of General Services for permission to use 63 New York City lamp poles, which was granted subject to certain conditions not relevant herein. Application was also made to the New York City Department of Parks and Recreation (hereinafter Parks Department) for permission to increase the height of sea fences covering 10 city streets to a minimum of 40 inches. (The height of the sea fences on the remaining streets within the eruv range from between 40 and 75 inches.) The eruv was completed on or about April 1, 1985 at a cost of approximately $18,000 entirely financed by the eruv committee.
Plaintiffs filed their complaint on March 12, 1985 alleging, inter alla, as follows: “the enclosing of the aforedescribed area by this religious device will create a religious aura in and have a metaphysical impact on the area which will force myself and other residents to assume special burdens to avoid. The only way to avoid this unwelcomed and unwanted religious device and the resultant religious aura and metaphysical impact in the area would be to move-away from the area and find residence elsewhere, in a neighborhood free from religious aura and/or designation.” (See, affidavit of plaintiff Joseph M. Smith, Mar. 9, 1985, pp 5, 6.)
*946 In opposition to plaintiffs’ motion for a preliminary injunction and in support of their motion to dismiss the complaint and for summary judgment, defendants argue that plaintiff, individually, lacks standing, that the eruv is not a religious symbol or device but a legal fiction created by Jewish law, that even if the eruv is such a symbol or device it does not violate the establishment clause and that the free exercise clause requires that city agencies accommodate the religious customs of the Orthodox Jewish community. It is further alleged that all actions taken by agencies of New York City were within their normal policies, rules and regulations.
With respect to the issue of standing, the court determines that plaintiff, individually, may maintain this action. The trend in New York State has been to expand rather than contract the doctrine of standing, especially in cases where failure to accord standing would result in no person being able to contest the action. (Matter of Dairylea Coop, v Walkley, 38 NY2d 6; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1.) Here, plaintiff’s interest in the outcome of this controversy as a resident of Belle Harbor is sufficiently particular to permit him to request judicial intervention to test the constitutionality of the eruv. (Matter of Fritz v Huntington Hosp., 39 NY2d 339; Boryszewski v Brydges, 37 NY2d 361.)
Plaintiffs’ allegations of improper procedure by Community Board No. 14 in approving the eruv are improperly raised in this action. Plaintiffs’ claims against the Community Board must be raised, if at all, in a CPLR article 78 proceeding. We note parenthetically, however, that plaintiffs have not supported their allegations of improper practices with any evidentiary facts.
The court will now address plaintiffs’ contention that the eruv has violated plaintiffs’ rights under the establishment clause of the 1st Amendment of the Constitution to the United States, made applicable to the States by the due process clause of the 14th Amendment. The religion clauses of the 1st Amendment to the United States Constitution provide that: “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof”. The first clause is referred to as the establishment clause, the second the free exercise clause. Although seemingly contradictory, the two clauses must be interpreted together in that their common purpose is to secure religious freedoms. {See, Choper, The Religion Clauses of the First Amendment: Reconciling the Conflict, 41 U Pitt L Rev 673.) The difficulty faced by courts in interpreting the aforedescribed clauses has been “to find a neutral course between the *947 two Religion Clauses, both of which are cast in absolute terms, and either of which, if expanded to a logical extreme, would tend to clash with the other.” (Walz v Tax Commn., 397 US 664, 668-669; see also, Zorach v Clauson, 343 US 306; Everson v Board of Educ., 330 US 1.) It is important to remember, however, that total separation of church and State is not mandated by the Constitution, nor would it be possible, since “[s]ome relationship between government and religious organizations is inevitable.” (Lemon v Kurtzman, 403 US 602, 614.) What is mandated by the court is accommodation for religious practices. This notion recognizes “that there are necessary relationships between government and religion; that government cannot be indifferent to religion in American life; and that, far from being hostile or even truly indifferent, it may, and sometimes must, accommodate its institutions and programs to the religious interests of the people”. (Tribe, American Constitutional Law § 14-4, at 822 [1978]; see, Lynch v Donnelly, 465 US 668, 79 L ed 2d 604, 610.) Thus, in the instant case, the court determines that the actions of the city agencies did not establish religion but were a valid accommodation to religious practice.
Although the Supreme Court has recently indicated its “unwillingness to be confined to any single test or criterion in this sensitive area” (Lynch v Donnelly, 465 US 668,_, 79 L ed 2d 604, 613, supra), case law has established three guiding principles to determine whether particular governmental conduct violates the establishment clause: that is, whether the conduct has a secular purpose even if that secular purpose is not primary, whether its principal effect either advances or inhibits religion, and whether there is excessive government entanglement with religion. (Lemon v Kurtzman, supra, pp 602, 612-613; see also, Widmar v Vincent, 454 US 263; Committee for Public Educ. v Regan, 444 US 646; Roemer v Maryland Public Works Bd., 426 US 736.)
The requirement of a secular purpose has been satisfied inasmuch as the eruv committee raised sea fences which had fallen into disrepair over the years. These sea fences had originally been built to prevent flooding, erosion and windblown sand from going onto the streets and neighboring property. The Department of Parks routinely allows for the improvement of public land by community or other philanthropic groups at their own expense and, in fact, many other of the sea fences along the beach had previously been repaired by residents of the area. Furthermore, the policy of New York City to allow equal access to public lands for religious or nonreligious purposes is an acceptable secular purpose. (Lynch v Donnelly, supra; Widmar v *948 Vincent, supra; McCreary v Stone, 739 F2d 716, affd sub nom. McCreary v Board of Trustees of Scarsdale, 471 US_,_S Ct_, 53 USLW 4431.)
The second prong of the Lemon test demands that religion neither be advanced nor inhibited by the conduct complained of. Here, the city accommodated a religious custom of Orthodox Jews by ^granting permission to use public land and poles in substantially the same manner as it has accommodated the religious beliefs of other New Yorkers. (See, Brashich v Port Auth., 484 F Supp 697, affd 628 F2d 1344.) These permits were granted pursuant to accepted and standard rules and regulations of New York City. No public moneys were expended on the eruv and there was no intent to advance religion in general or the Orthodox Jewish faith in particular, nor was that the result. (Brashich v Port Auth., supra.) Plaintiffs’ argument that the eruv “enclosed” and “separated” the area and that the eruv is a “wall” is simply not true. The eruv is a virtually invisible boundary line indistinguishable from the utility poles and telephone wires in the area.
The third criterion is that the conduct should not create excessive government entanglement with religion. Here, the role of the city was to permit cord or wire to be strung from lamp poles and to permit certain sea fences to be raised. The Department of General Services routinely allows commercial signs and banners to be hung from New York City lamp poles. The Department of Parks routinely allows public lands to be used for various assemblies, meetings and exhibits, temporarily or permanently, for secular or religious purposes. There is no indication that the eruv committee was treated any differently than any other group desirous of using public facilities for other forms of expression. The construction of the eruv was financed totally by private funds with no financial assistance by the city and the eruv will be maintained in the future totally by private funds.
With respect to plaintiffs’ allegation that Administrative Code § 383-1.0 has been violated, the court determines that it is equally without merit. Said section grants easements of light and air, and access over, along and across certain public beaches in New York City to the owners of property abutting on the inland side of such beaches. Setting aside defendants’ contention that the individual plaintiff’s residence does not border the beach and thus he has no standing to challenge an alleged loss of this easement, it has not been demonstrated that the minimal raising of the sea fences obstructs the easement of light and air or impedes access to the beach.
*949 Although the religion clauses and therefore the analysis above is applicable to the States through the 14th Amendment, since plaintiffs have challenged the construction of the eruv pursuant to NY Constitution, article I, § 3 the court will separately consider this part of the complaint. Article I, § 3 provides: “The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind”. New York courts have long recognized the principle of accommodation. A representative quote from one of the cases under said section states that “[t]he free practice of one’s religion is a right deeply cherished by the citizens of our State and Nation, and one that is zealously protected by the free exercise clause of the First Amendment.” (Matter of Martine S. v Anthony D., 120 Misc 2d 567, 568.) New York courts have repeatedly held that by their very nature religious institutions are beneficial to the public welfare and consequently proposed religious uses should be accommodated. (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, 38 NY2d 283, 293; Matter of Community Synagogue v Bates, 1 NY2d 445; Matter of Holy Spirit Assn. v Rosenfeld, 91 AD2d 190.)
The court has considered the parties’ remaining contentions and finds them to be without merit. In conclusion, this Judge desires to toss a bouquet to all counsel who participated and submitted memoranda of law in aid of their respective positions. Their research was of incalculable assistance in rendering this opinion.
Accordingly, plaintiffs’ motion for a temporary injunction is denied. Defendants’ cross motion to dismiss the complaint and for summary judgment is granted.