Jewish People for the Betterment of Westhampton Beach v. Village of Westhampton Beach

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of January, two thousand fifteen.

PRESENT: DENNIS JACOBS,
        REENA RAGGI,
        DEBRA ANN LIVINGSTON,
                Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
Jewish People for the Betterment of
Westhampton Beach, Arnold Sheiffer,
Estelle Lubliner,
        Plaintiffs-Appellants,

        -v.-                                                    14-1441

The Village of Westhampton Beach, East
End Eruv Association, Inc., Verizon
New York, Inc., and the Long Island
Lighting Company, d/b/a LIPA,
        Defendants-Appellees.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANTS:              JONATHAN SINNREICH, with Timothy
                             F. Hill, Sinnreich Kosakoff &
                             Messina LLP, Central Islip, New
                             York.

1

YEHUDAH L. BUCHWEITZ, with Robert G. Sugarman, Weil, Gotshal & Manges LLP, New York, New York, <u>for</u> East End Eruv Association, Inc.

ERICA S. WEISGERBER, with Michael E. Wiles, Debevoise & Plimpton LLP, New York, New York, <u>for</u> Verizon New York, Inc.

ZACHARY MURDOCK, with David Lazer, Lazer Aptheker Rosella & Yedid PC, Melville, New York, <u>for</u> Long Island Lighting Company d/b/a LIPA.

Appeal from judgments of the United States District Court for the Eastern District of New York (Wexler, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Arnold Sheiffer, Estelle Lubliner, and Jewish People for the Betterment of Westhampton Beach (collectively "plaintiffs") appeal from judgments of the United States District Court for the Eastern District of New York (Wexler, <u>J.</u>), dismissing their complaint. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Plaintiffs allege violations of 42 U.S.C. § 1983 in connection with the installation in Westhampton Beach, New York of inconspicuous strips attached to utility poles. Because the strips delineate an "eruv," which is significant to some as a matter of Jewish law, plaintiffs allege an unconstitutional establishment of religion. We affirm.

**1.** Defendants raise two jurisdictional challenges, neither of them persuasive.

**a.** Defendants argue that the order appealed from was not a final judgment under 28 U.S.C. § 1291, because a stipulation filed by plaintiffs dismissed their claims *without prejudice* against defendant Village of Westhampton Beach. But in this Circuit, a plaintiff may cure such a

2

defect in appellate jurisdiction by disclaiming an intent to revive the dismissed claim (effectively, converting it to a dismissal *with prejudice*, for reasons of estoppel).  See Leung v. N.Y. Univ., 495 F. App'x 124, 125 (2d Cir. 2012) (citing Slayton v. Am. Exp. Co., 460 F.3d 215, 225 (2d Cir. 2006)).  Plaintiffs' reply brief disclaims any intent to revive their dismissed claim against the Village of Westhampton Beach.  So that potential obstacle to appellate jurisdiction is removed.

**b.**  Defendants also argue that plaintiffs lack standing under Article III, which limits the judicial power of the United States to the resolution of cases and controversies.  U.S. Const. art. III, § 2.  To satisfy this jurisdictional requirement, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision."  Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009) (internal quotation marks omitted).

We have found standing in the Establishment Clause context for a plaintiff who alleged that he "was made uncomfortable by direct contact with religious displays."  Id. at 491.  Plaintiffs here allege that "[t]he eruv . . . will *not* go unnoticed; rather, it will be a constant and ever-present symbol, message and reminder to the community at large, that the secular public spaces of the Village have been transformed for religious use and identity."  Compl. ¶ 1.  Plaintiffs, in particular, allege that they "will be confronted with the . . . religious display on a daily basis."  Id. ¶ 5.  Those allegations, such as they are, suffice under our precedents.

Defendants seek to distinguish the eruv from the religious displays at issue in Cooper on the ground (*inter alia*) that the eruv is far less obtrusive, and that-- contrary to plaintiffs' allegations--the eruv does not convey any message to the uninitiated.  But those fact-based arguments are insufficient at the pleadings stage, in which we must assume the truth of plaintiffs' well-pleaded factual allegations.[1]  Other courts have found no standing problem

---

[1]    The parties submitted (extensive) factual material outside the pleadings.  While the district court did not explicitly exclude this material, its decisions dismissing

in challenges to government involvement in the construction of an eruv.  See ACLU of N.J. v. City of Long Branch, 670 F. Supp. 1293, 1294 (D.N.J. 1987).

**2.**  On the merits, however, plaintiffs have failed to state a claim for a violation of the Establishment Clause against any of defendants-appellees.

**a.**  Two of the remaining three defendants--Verizon New York, Inc., and the East End Eruv Association, Inc.--are plainly not state actors.  See Compl. ¶ 11 ("EEEA is a not-for-profit-corporation"); id. ¶ 13 ("Verizon New York Inc. is a . . . subsidiary of Verizon Communications, Inc., a publicly held corporation.").  The Establishment Clause is a check on the power of our government.  See, e.g., Cooper, 577 F.3d at 491.  So all claims against these defendants must be dismissed for lack of state action.

**b.**  The remaining defendant, LIPA, does not dispute that, as "a political subdivision of the State of New York," Compl. ¶ 12, it is a state actor.  So we turn to the merits of plaintiffs' Establishment Clause claims against LIPA.

Although "much criticized," the Lemon test still governs cases alleging violations of the Establishment Clause.  Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J., 760 F.3d 227, 238 n.12 (2d Cir. 2014).  Under Lemon, for "government action to satisfy the neutrality principle of the Establishment Clause, it must (1) 'have a secular purpose,' (2) have a 'principal or primary effect that neither advances nor inhibits religion,' and (3) 'not foster an excessive government entanglement with religion.'"  Id. at 238 (quoting Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971)) (internal ellipses omitted).

An eruv is a "demarcation of a defined geographic area within which adherents subscribing to a certain interpretation of Jewish law believe that they may perform certain activities that are otherwise prohibited on the Jewish Sabbath and Yom Kippur."  Compl. ¶ 19.  It is

---

plaintiffs' claims give us no "reason to believe that the extrinsic evidence actually affected [its] decision[s]" and we accordingly conclude that the extrinsic material was "implicitly excluded."  See Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999).

4

undisputed that the Westhampton eruv was delineated by "nearly invisible" staves and wires attached to utility poles. Compl. ¶¶ 1, 20. Plaintiffs do not allege that these staves contain any overtly religious features that would distinguish them to a casual observer as any different from strips of material that might be attached to utility poles for secular purposes.

Plaintiffs have not plausibly pleaded that there was no secular purpose to the governmental action here--LIPA's entry into a paid licensing agreement allowing the installation of items of religious significance on utility poles. While plaintiffs repeatedly state in their complaint that the *establishment of an eruv* serves no secular purpose, the complaint does not contain similar allegations with regard to *LIPA*'s action of permitting the EEEA to attach lechis to its utility poles, and does not allege that LIPA granted access to its utility poles in a non-neutral manner. Neutral accommodation of religious practice qualifies as a secular purpose under Lemon. See, e.g., Good News Club v. Milford Cent. School, 533 U.S. 98, 114 (2001). And other courts have held that absent evidence that the erection of an eruv is facilitated in a non-neutral manner, permitting an organization to attach lechis to utility poles serves the secular purpose of accommodation. See, e.g., Long Branch, 670 F. Supp. at 1295-96.

In religious display cases, Lemon's second consideration collapses into the question whether a "reasonable observer of the display in its particular context [would] perceive a message of governmental *endorsement* or sponsorship of religion." Skoros v. City of New York, 437 F.3d 1, 29 (2d Cir. 2006). No reasonable observer who notices the strips on LIPA utility poles would draw the conclusion that a state actor is thereby endorsing religion, even assuming that a reasonable observer was aware that a state actor (LIPA) was the entity that contracted with a private party to lease the space.

Finally, it is undisputed that private parties will finance, install, and maintain the strips; so there is no risk of "excessive" government entanglement with religion.[2]

_____

[2]     The license agreement between LIPA and EEEA permitting the EEEA to affix lechis to LIPA's utility poles is referenced in the complaint and is integral to its

5

Compared with many government actions that have survived the Lemon test, LIPA's accommodation of the eruv has *more* of a secular purpose, causes *less* of an advancement of religion, and fosters *less* church-and-state entanglement. See, e.g., Good News Club, 533 U.S. at 103-04 (allowing a "private Christian organization for children" to hold meetings at a public school "for the purpose of conducting religious instruction and Bible study"); Lynch v. Donnelly, 465 U.S. 668, 671 (1984) (allowing a Christmas nativity scene display, on public property, that included "the Infant Jesus, Mary and Joseph, angels, shepherds, kings, and animals," up to five feet tall); Newdow v. Peterson, 753 F.3d 105, 107-08 (2d Cir. 2014) (upholding federal statutes requiring the motto "in God We Trust" to appear on all U.S. currency, reasoning that the motto's "secular purpose" is a "reference to our religious heritage"). A fortiori, LIPA's action permitting the EEEA to erect the eruv is not an unconstitutional establishment of religion.

Every court to have considered whether similar government actions violate the Establishment Clause has agreed that they do not. See Long Branch, 670 F. Supp. at 1295 ("The city allowed the eruv to be created to enable observant Jews to engage in secular activities on the Sabbath. This action does not impose any religion on the other residents of Long Branch."); Smith v. Community Bd. No. 14, 491 N.Y.S.2d 584, 586 (N.Y. Sup. Ct. 1985) (allowing private parties to construct an eruv on public property "did not establish religion but [was] a valid accommodation to religious practice"); see also Tenafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 176 (3d Cir. 2002) (explaining that a "reasonable, informed observer" of an eruv "would not perceive an endorsement of Orthodox Judaism").

---

allegations. See Compl. ¶ 42; L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (a document is "integral" to a complaint where the complaint "relie[s] heavily upon its terms and effect") (internal quotation marks omitted). This agreement establishes (and plaintiffs do not contest) that the EEEA will finance, install, and maintain the strips. See License Agreement between Long Island Lighting Company D/B/A LIPA Through Its Agent National Grid Electric Services LLC and East End Eruv Association, Inc., Article V, § 1, Verizon Compl. Ex. B, Verizon N.Y., Inc. v. Vill. of Westhampton Beach, No. 11-252-cv (E.D.N.Y. Jan. 18, 2011), ECF No. 1.

For the foregoing reasons, and finding no merit in plaintiffs' other arguments, we hereby **AFFIRM** the judgments of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK