Jewish People for the Betterment of Westhampton Beach v. Village of Westhampton Beach

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2014


(Argued: November 21, 2014     Decided: January 6, 2015

Reissued as Opinion: February 11, 2015)

Docket No. 14-1441

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


Jewish People for the Betterment of
Westhampton Beach, Arnold Sheiffer,
Estelle Lubliner,

                    Plaintiffs-Appellants,


           - v.-


The Village of Westhampton Beach, East
End Eruv Association, Inc., Verizon New
York, Inc., and the Long Island Lighting
Company, d/b/a LIPA,

                    Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


       Before:               JACOBS, RAGGI, and LIVINGSTON, Circuit Judges.

Appeal from judgments of the United States District Court for the Southern District of New York (Wexler, J.) dismissing a suit brought under 42 U.S.C. § 1983 and the Establishment Clause of the United States Constitution. We affirm.

JONATHAN SINNREICH, with Timothy F. Hill, Sinnreich Kosakoff & Messina LLP, Central Islip, New York, for Appellants.

YEHUDAH L. BUCHWEITZ, with Robert G. Sugarman, Weil, Gotshal & Manges LLP, New York, New York, for Appellee East End Eruv Association, Inc.

ERICA S. WEISGERBER, with Michael E. Wiles, Debevoise & Plimpton LLP, New York, New York, for Appellee Verizon New York, Inc.

ZACHARY MURDOCK, with David Lazer, Lazer Aptheker Rosella & Yedid PC, Melville, New York, for Appellee Long Island Lighting Company d/b/a LIPA.

PER CURIAM:

Plaintiffs Arnold Sheiffer, Estelle Lubliner, and Jewish People for the Betterment of Westhampton Beach filed this action for declaratory and injunctive relief to prevent the creation in Westhampton Beach of an "eruv," a delineated geographic area significant to certain adherents of Judaism. Plaintiffs now

2

appeal from judgments entered on February 4, 2013, and May 21, 2013, in the

United States District Court for the Eastern District of New York (Leonard D.

Wexler, J.) in favor of East End Eruv Association, Inc. ("EEEA"), Verizon New

York, Inc. ("Verizon"), and Long Island Lighting Company ("LIPA") pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 12(c).  Plaintiffs contend that the

district court erred as a matter of law in concluding that their complaint failed to

state plausible claims for relief under 42 U.S.C. § 1983 for violation of the

Establishment Clause of the United States Constitution.  See U.S. Const. amend. I.

The argument is without merit, and we therefore affirm.

**I**

In 2010, EEEA entered into licensing agreements with Verizon and LIPA

that allowed EEEA, for a fee, to finance, install, and maintain plastic strips known

as "lechis" on utility poles owned by Verizon and LIPA and located in

Westhampton Beach, New York.[1]  The agreements are not exclusive; LIPA may

---

[1]       The license agreement between LIPA and EEEA permitting the
EEEA to affix lechis to LIPA's utility poles is referenced in the complaint and is
integral to its allegations.  See Compl. ¶ 42; L-7 Designs, Inc. v. Old Navy, LLC,
647 F.3d 419, 422 (2d Cir. 2011) (a document is "integral" to a complaint if the
complaint "relie[s] heavily upon its terms and effect") (internal quotation marks
omitted).  This agreement establishes (and plaintiffs do not contest) that the
EEEA will finance, install, and maintain the strips.  See License Agreement

3

grant similar attachment rights to other parties.

Plaintiffs allege that the purpose of these contracts is to allow EEEA to establish an "eruv," i.e., a "continuous physical boundary" and "demarcation of a defined geographic area within which adherents subscribing to a certain interpretation of Jewish law believe that they may perform certain activities that are otherwise prohibited on the Jewish Sabbath and Yom Kippur."  Compl. ¶ 19. Such an eruv will be created by attaching plastic strips or "lechis," "upwards of forty inches in length," to Verizon's and LIPA's utility poles.  Id. ¶ 21.  Plaintiffs assert that "[t]he eruv . . . will not go unnoticed" but, rather, "will be a constant and ever-present symbol, message and reminder to the community at large, that the secular public spaces of the Village have been transformed for religious use and identity."  Id. ¶ 1.  Plaintiffs further allege that they "will be confronted with the EEEA's religious display on a daily basis."  Id. ¶ 5.

Based on these allegations, plaintiffs sought (1) a declaration that the proposed eruv violates the Establishment Clause, and (2) an injunction

---

between Long Island Lighting Company D/B/A LIPA Through Its Agent National Grid Electric Services LLC and East End Eruv Association, Inc., Article V, § 1, Verizon Compl. Ex. B, Verizon N.Y., Inc. v. Vill. of Westhampton Beach, No. 11-252-cv (E.D.N.Y. Jan. 18, 2011), ECF No. 1.

preventing its creation. EEEA and Verizon moved to dismiss the complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6), which the district court

granted on February 4, 2013. LIPA then moved for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c), which the district court

granted on May 21, 2013. Plaintiffs dismissed the action without prejudice as to

the remaining defendant, Westhampton Beach, pursuant to Federal Rule of Civil

Procedure 41(a)(1)(A)(ii). This timely appeal followed.

## II

Defendants raise two jurisdictional challenges, neither of them persuasive.

## A

Defendants argue that the order appealed from was not a final judgment

under 28 U.S.C. § 1291, because a stipulation filed by plaintiffs dismissed their

claims *without prejudice* against defendant Village of Westhampton Beach. But in

this Circuit, a plaintiff may cure such a defect in appellate jurisdiction by

disclaiming an intent to revive the dismissed claim (effectively, converting it to a

dismissal *with prejudice*, for reasons of estoppel). See Leung v. N.Y. Univ., 495 F.

App'x 124, 126 (2d Cir. 2012) (citing Slayton v. Am. Exp. Co., 460 F.3d 215, 225

(2d Cir. 2006)). Plaintiffs' reply brief disclaims any intent to revive their

5

dismissed claim against the Village of Westhampton Beach.  So that potential

obstacle to appellate jurisdiction is removed.

**B**

Defendants also argue that plaintiffs lack standing under Article III, which

limits the judicial power of the United States to the resolution of cases and

controversies.  U.S. Const. art. III, § 2.  To satisfy this jurisdictional requirement,

"(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal

connection between the injury and the conduct at issue; and (3) the injury must

be likely to be redressed by a favorable decision."  Cooper v. U.S. Postal Serv.,

577 F.3d 479, 489 (2d Cir. 2009) (internal quotation marks omitted).

We have found standing in the Establishment Clause context for a plaintiff

who alleged that he "was made uncomfortable by direct contact with religious

displays."  Id. at 491.  Plaintiffs here allege that "[t]he eruv . . . will not go

unnoticed; rather, it will be a constant and ever-present symbol, message and

reminder to the community at large, that the secular public spaces of the Village

have been transformed for religious use and identity."  Compl. ¶ 1.  Plaintiffs, in

particular, allege that they "will be confronted with the . . . religious display on a

daily basis." Id. ¶ 5. Those allegations, such as they are, suffice under our precedents.

Defendants seek to distinguish the eruv from the religious displays at issue in Cooper on the ground (*inter alia*) that the eruv is far less obtrusive, and that--contrary to plaintiffs' allegations--the eruv does not convey any message to the uninitiated. But those fact-based arguments are insufficient at the pleadings stage, in which we must assume the truth of plaintiffs' well-pleaded factual allegations.[2] Other courts have found no standing problem in challenges to government involvement in the construction of an eruv. See ACLU of N.J. v. City of Long Branch, 670 F. Supp. 1293, 1294 (D.N.J. 1987).

### III

On the merits, however, plaintiffs have failed to state a claim for a violation of the Establishment Clause against any of defendants-appellees.

---

[2] The parties submitted (extensive) factual material outside the pleadings. While the district court did not explicitly exclude this material, its decisions dismissing plaintiffs' claims give us no "reason to believe that the extrinsic evidence actually affected [its] decision[s]" and we accordingly conclude that the extrinsic material was "implicitly excluded." See Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999).

**A**

Two of the remaining three defendants--Verizon New York, Inc., and the East End Eruv Association, Inc.--are plainly not state actors. See Compl. ¶ 11 ("EEEA is a not-for-profit-corporation"); id. ¶ 13 ("Verizon New York Inc. is a . . . subsidiary of Verizon Communications, Inc., a publicly held corporation."). The Establishment Clause is a check on the power of our government. See, e.g., Cooper, 577 F.3d at 491. So all claims against these defendants must be dismissed for lack of state action.

**B**

The remaining defendant, LIPA, does not dispute that, as "a political subdivision of the State of New York," Compl. ¶ 12, it is a state actor. So we turn to the merits of plaintiffs' Establishment Clause claims against LIPA.

Although "much criticized," the Lemon test still governs cases alleging violations of the Establishment Clause. Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J., 760 F.3d 227, 238 n.12 (2d Cir. 2014). Under Lemon, for "government action to satisfy the neutrality principle of the Establishment Clause, it must (1) 'have a secular purpose,' (2) have a 'principal or primary effect that neither advances nor inhibits religion,' and (3) 'not foster an excessive government entanglement with

8

religion.'" Id. at 238 (quoting Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971)) (internal ellipses omitted).

An eruv is a "demarcation of a defined geographic area within which adherents subscribing to a certain interpretation of Jewish law believe that they may perform certain activities that are otherwise prohibited on the Jewish Sabbath and Yom Kippur." Compl. ¶ 19. It is undisputed that the Westhampton eruv was delineated by "nearly invisible" staves and wires attached to utility poles. Id. ¶¶ 1, 20. Plaintiffs do not allege that these staves contain any overtly religious features that would distinguish them to a casual observer as any different from strips of material that might be attached to utility poles for secular purposes.

Plaintiffs have not plausibly pleaded that there was no secular purpose to the governmental action here: LIPA entered into a paid licensing agreement allowing the installation of items of religious significance on utility poles. While plaintiffs repeatedly state in their complaint that the *establishment of an eruv* serves no secular purpose, the complaint does not contain similar allegations with regard to *LIPA's* action of permitting the EEEA to attach lechis to its utility poles, and does not allege that LIPA granted access to its utility poles in a non-neutral

9

manner. Neutral accommodation of religious practice qualifies as a secular purpose under Lemon. See, e.g., Good News Club v. Milford Cent. School, 533 U.S. 98, 114 (2001). And other courts have held that, absent evidence that the erection of an eruv is facilitated in a non-neutral manner, permitting an organization to attach lechis to utility poles serves the secular purpose of accommodation. See, e.g., Long Branch, 670 F. Supp. at 1295-96.

In religious display cases, Lemon's second consideration collapses into the question whether a "reasonable observer of the display in its particular context [would] perceive a message of governmental endorsement or sponsorship of religion." Skoros v. City of New York, 437 F.3d 1, 29 (2d Cir. 2006). No reasonable observer who notices the strips on LIPA utility poles would draw the conclusion that a state actor is thereby endorsing religion, even assuming that a reasonable observer is aware that a state actor (LIPA) was the entity that contracted with a private party to lease the space.

Finally, it is undisputed that private parties will finance, install, and maintain the strips; so there is no risk of "excessive" government entanglement with religion.

Compared with many government actions that have survived the <u>Lemon</u> test, LIPA's accommodation of the eruv has *more* of a secular purpose, causes *less* of an advancement of religion, and fosters *less* church-and-state entanglement. <u>See, e.g.</u>, <u>Good News Club</u>, 533 U.S. at 103-04 (allowing a "private Christian organization for children" to hold meetings at a public school "for the purpose of conducting religious instruction and Bible study"); <u>Lynch v. Donnelly</u>, 465 U.S. 668, 671 (1984) (allowing a Christmas nativity scene display, on public property, that included "the Infant Jesus, Mary and Joseph, angels, shepherds, kings, and animals," up to five feet tall); <u>Newdow v. Peterson</u>, 753 F.3d 105, 107-08 (2d Cir. 2014) (upholding federal statutes requiring the motto "in God We Trust" to appear on all U.S. currency, reasoning that the motto's "secular purpose" is a "reference to our religious heritage"). A fortiori, LIPA's action permitting the EEEA to erect the eruv is not an unconstitutional establishment of religion.

Every court to have considered whether similar government actions violate the Establishment Clause has agreed that they do not. <u>See</u> <u>Long Branch</u>, 670 F. Supp. at 1295 ("The city allowed the eruv to be created to enable observant Jews to engage in secular activities on the Sabbath. This action does not impose any religion on the other residents of Long Branch."); <u>Smith v. Community Bd. No.</u>

11

14, 491 N.Y.S.2d 584, 586 (N.Y. Sup. Ct. 1985) (allowing private parties to construct an eruv on public property "did not establish religion but [was] a valid accommodation to religious practice"); see also Tenafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 176 (3d Cir. 2002) (explaining that a "reasonable, informed observer" of an eruv "would not perceive an endorsement of Orthodox Judaism").

## CONCLUSION

For the foregoing reasons, and finding no merit in plaintiffs' other arguments, we hereby **AFFIRM** the judgments of the district court.